[Civ. No. 23491.   Second Dist., Div. One.   Apr. 28, 1959.]

ARTHUR A. FAIRCHILD, Appellant, v. GERALDINE F. ADAMS, Respondent.

Kenneth M. Liskum for Appellant.

Austin, Austin, Jones & Chaffee and Irving P. Austin for Respondent.

WHITE, P. J.—Plaintiff appeals from the judgment for defendant in his action for malicious prosecution. Plaintiff and defendant are brother and sister of Myrtle Welch, deceased. By the instant action, plaintiff brother seeks to recover for damages allegedly suffered because of defendant's objections to the probate of their sister's will. (See *In re Welch's Estate*, (Cal.App.) 261 P.2d 18; *Estate of Welch*, 43 Cal.2d 173 [272 P.2d 512].)

The will and codicil offered for probate by appellant were found by a 10 to 2 verdict of the jury in the superior court to have been made under undue influence of the appellant. The judge of the superior court denied appellant's motions for judgment notwithstanding the verdict and for a new trial. On appeal, three justices of the District Court of Appeal said: "The record in this case has been read with care. It shows that the evidence does support the verdict of the jury . . ." (*In re Welch's Estate* (Cal.App.), 261 P.2d 18, 20.) Hearing was granted by the Supreme Court and Mr. Justice Spence, speaking for that court (with the concurrence of four other justices) reversed the judgment and admitted the will to probate, stating at page 175, that ". . . it appears that appellant's contention that the evidence was insufficient to support the jury's finding must be sustained."

The Supreme Court's decision reversing said judgment, at page 175 thereof, includes the following language quoted from *Estate of Arnold*, 16 Cal.2d 573, 577 [107 P.2d 25] : ". . . Evidence must be produced that pressure was brought to bear directly upon the testamentary act . . . Mere general influence, however strong and controlling, not brought to bear upon the testamentary act, is not enough; it must be influence used directly to procure the will, and must amount to *coercion* destroying free agency on the part of the testator . . . mere opportunity to influence the mind of the testator, even coupled with an interest or a motive to do so, is not sufficient . . .

"The unbroken rule in this state is that courts must refuse to set aside the solemnly executed will of a deceased person upon the ground of undue influence unless there be proof of 'a pressure which overpowered the mind and bore down the volition of the testator at the very time the will was made'..."

Myrtle Welch, the deceased sister of plaintiff and defendant, after the death of her husband in January, 1947, decided to move from her Compton home and live with her sister (defendant herein) in her sister's Long Beach home, listed her own home for sale and started packing her belongings, some for storage and some for moving to defendant's home.

About February 1st, while the two sisters were still packing, plaintiff appeared at Myrtle's home and caused a change of plan. He told defendant herein, "Take your things and get out of here. I am going to stay with Myrtle." He cancelled Myrtle's listing for sale of her home. When plaintiff ordered defendant herein to "get out," Myrtle accompanied her into the yard and said: "I have stood all I can stand of fighting. You will just have to do as he says ... I will stay here until he gets his things out of the garage, then I will ease him out without fighting."

February 28, 1947, Myrtle willed plaintiff herein all her property, approximately $18,000. She was then 68 years old. At approximately the same time, said plaintiff willed Myrtle $25,000, which, according to his own testimony, he did not have. December 26, 1949, when Myrtle was 70 years old, she and plaintiff herein exchanged testamentary documents by which each named the other as executor and executrix to act without bond. As said by the Supreme Court, at page 177, "No one except Myrtle and Arthur was present when the wills and codicils were executed.

"Myrtle was of a mild disposition and tried to avoid quarrels with Arthur ... Arthur systematically excluded Geraldine (defendant herein) and her sons from the house. However, Myrtle surreptitiously visited Geraldine in Long Beach when Arthur was away on his frequent mining trips."

The further testimony mentioned in the decision of the Supreme Court concerns only plaintiff's arrangements about two weeks before Myrtle's death for the cheapest possible disposal of the latter's body without any funeral, his failure to call a doctor or nurse to attend her until a few hours before her death when he was told by the mortician that he would have to procure a doctor's signature on a death certificate or await an autopsy before the body could be disposed of, the

filthy, emaciated and unkempt condition of her body, and his failure to attend her funeral. She died December 22, 1951, at the age of 72 years.

The following language is quoted from page 180 of said decision: "At most, the record here shows no more than that Arthur was so situated as to have had an opportunity to unduly influence the mind of Myrtle, and that *his actions and conduct at times might be regarded as suspicious* . . ." (Emphasis added.)

Justices Schauer and Carter dissented, Justice Schauer, at page 180, stating that in his view "the evidence, construed favorable to sustaining the judgment . . . amply supports all essential implied findings of the jury," and Justice Carter, at pages 181 and 182, quotes the provision of section 371 of the Probate Code that "Any issue of fact involving . . . the due execution and attestation of the will, or any other question substantially affecting the validity of the will, must be tried by a jury . . ." He then states that "In this case, we have 10 jurors rendering a verdict on the issue of undue influence; we have an able and outstanding trial judge denying motions for a nonsuit, directed verdict, judgment notwithstanding the verdict and for a new trial; and three able and eminent jurists of the District Court of Appeal rendering a unanimous decision affirming the judgment (*Estate of Welch* (Cal.App.), 261 P.2d 18)—holding the evidence sufficient to establish the issue of undue influence. In addition to the above we have Mr. Justice Schauer and myself on this court—a total of six judges in addition to the 10 members of the jury—all of the opinion that the evidence is sufficient to support a finding of undue influence."

In the instant action, by the complaint, it is alleged that defendant procured the verdict of the jury and the judgment of the trial court denying probate of the will and codicil of Myrtle Welch, deceased, by perjured testimony, of which five examples are alleged. As to each example the evidence is conflicting and the trial court has found that no perjured testimony was given by defendant and that all testimony given and produced by her at said trial was true.

The court further found and concluded that defendant did not act in connection with the filing and prosecution of her opposition to the probate of the will of her deceased sister "with malice or without probable cause"; and that it is not true that plaintiff has been damaged "in any manner by any

action complained of by plaintiff in the said complaint herein.''

Appellant's grounds of appeal are stated by him in his opening brief as follows:

''(a) That the Trial Court based its decision on the dissenting opinion of the Honorable Justice Carter set forth in the prior case, *Estate of Welch*, 43 Cal.2d 173 [272 P.2d 512], rather than on the majority opinion.

''(b) That the Trial Court, in this case, ignored the unfair means and perjured testimony by which Defendant and Respondent procured the decision in her favor in the Trial Court in the prior case.

''(c) That the Trial Court, in this case, ignored the rules or law pertaining to Respondent's defense of 'Advice of Counsel.'

''(d) That the Trial Court, in this case, ignored the rules of law pertaining to Malicious Prosecution of a Civil Action.''

Plaintiff, in his complaint in the instant action, cites and quotes from the decision of the Supreme Court in *Estate of Welch, supra*. Defendant, in her answer thereto, admits the allegations of the complaint in that respect and alleges and quotes at length from the dissenting opinion of Justice Carter hereinbefore referred to. The court found both allegations true.

As urged by appellant in the instant action, inferior courts are bound by the decisions of the Supreme Court. (13 Cal.Jur.2d, p. 680, sec. 144, and cases there cited.) However, ''It is a fundamental qualification of the doctrine of stare decisis that the authority of a decision is limited to the points therein actually involved and actually decided. Thus, such authority does not extend to what may be said in the opinion aside from or in addition to the decided points.'' (13 Cal.Jur. 2d, p. 662, sec. 129, and cases there cited.)

In the instant action, the judge of the trial court decided that defendant had ''probable cause'' for opposing the probate of the will of her sister. The Supreme Court in *Welch Estate, supra,* determined that the evidence produced at the trial in that proceeding was not sufficient to support the judgment that both the will and codicil were the result of undue influence exercised by plaintiff upon decedent at the exact times of their execution. That is a different issue from the one determined by the court in the instant action, to wit, that the evidence produced by defendant in said will contest and in the instant action was sufficient to cause a reasonable

person to believe that defendant had exercised such undue influence.

It cannot be assumed in the instant action that plaintiff, her attorney, 10 jurors, the trial judge, three judges of the District Court of Appeal, and two Supreme Court justices were not reasonable persons. They considered the evidence produced at the will contest alone sufficient, not only to justify the commencement of the proceeding, but also to support the judgment that the will and codicil were results of such undue influence. They were declared by the Supreme Court to be in error—but not unreasonable—in their opinions.

The decision of the Supreme Court was not that no undue influence had been used by plaintiff, but that defendant had failed to prove that the testamentary documents were executed by decedent because of undue influence exerted upon her by defendant at the very time of her execution of her will and codicil.

Whether the evidence in the instant action, of which the evidence in the will contest is the major portion, shows *probable cause* for defendant's opposition to plaintiff's petition for probate of their sister's will and codicil presents a different question, and one which is not to be determined alone upon the decision of the Supreme Court upon the will contest, wherein no reference whatever is made to the existence or nonexistence of probable cause for instituting the action challenging the plaintiff's petition for probate of the will and codicil of Myrtle Welch, the sister of plaintiff and defendant.

The holding of the trial court favorable to respondent herein concerning the existence of probable cause for the latter's opposition to appellant's petition for probate of the will may not be disturbed merely upon the ground that the Supreme Court reversed the judgment obtained by her following a jury trial upon the issues framed by her complaint in opposition to probate of the will. The question of probable cause for instituting the opposition to probate of the will was not before or decided by the Supreme Court.

The favorable outcome of the proceedings in the court below is conclusive evidence, in the absence of fraud, of the existence of probable cause for defendant's opposition to plaintiff's petition for probate, notwithstanding reversal by the Supreme Court. (*Bealmear* v. *Southern Cal. Edison Co.,* 22 Cal.2d 337, 340 [139 P.2d 20], and cases there cited.)

Appellant's statement in his opening brief that although it was immaterial and highly prejudicial certain testi-

mony was received is not a ground for reversal since no proper and timely objection to said evidence was made and no error of the trial court can be predicated thereon.

Appellant urges that, even conceding the judgment in the original action to be conclusive evidence of probable cause for instituting it, the judgment for defendant in the instant action should be reversed because of ''perjury'' shown by the inconsistencies in the evidence produced on the part of the defendant herein at the will contest itself, and calls particular attention to her statement at the trial of the instant action ''that she was incapable of judging (her sister's sanity) and needed a psychiatrist herself.''

A careful reading of the entire transcript of the evidence in the instant action indicates that it must have been an extremely unpleasant and grueling experience for the elderly defendant to try to remember exactly what she had told her attorney some five or six years before about events and conversations which took place some five years before that, and just what her testimony had been in the will contest. However, her testimony convinces this court, as it did the judge who tried the instant action, that no perjured testimony was given or produced by her.

Our determination that the trial court was correct in holding defendant had ''probable cause'' for contesting plaintiff's petition for probate of their sister's will and codicil makes it unnecessary to consider the other grounds for reversal urged by appellant.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 20, 1959, and appellant's petition for a hearing by the Supreme Court was denied June 24, 1959.